**STATE of Missouri, Plaintiff–Appellant,**

v.

**Gregory A. NORMAN, Defendant–Respondent.**

**No. 25891.**

Missouri Court of Appeals, Southern District, Division One.

March 25, 2004.

Petition for Rehearing and Transfer Denied April 16, 2004.

Application for Transfer Denied May 25, 2004.

John M. Morris, Special Assistant Prosecuting Attorney, Greene County, for Appellant.

Donald R. Cooley, Springfield, for Respondent.

JAMES K. PREWITT, Judge.

The State of Missouri files this interlocutory appeal, pursuant to § 547.200.1, RSMo 2000, following the trial court's grant of Gregory Norman's (Defendant's) motion to suppress evidence seized in connection with the execution of a search warrant on his home in Christian County, Missouri. The trial court found that the affidavit used in support of the search warrant failed to establish probable cause for the search. The State argues that the trial court erred in granting Defendant's motion to suppress because the search warrant was supported by probable cause. Further, according to the State, even if the allegations stated in the affidavit failed to establish probable cause, suppression of the evidence was precluded by the good faith exception outlined in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

## Facts

On December 18, 2001, officers and emergency personnel were called to a residence in Springfield, Missouri. Richard Norman, brother of Defendant, died at the scene. Mr. Norman had an apparent bullet wound to the chest.

On December 19, 2001, Corporal Richard Counts of the Springfield Police Department presented an affidavit in support of a search warrant for Defendant's residence to a judge in Christian County. That judge signed and issued the search warrant on that same date at 12:10 a.m. Various items were seized from the property, pursuant to the search warrant.

Defendant was charged by information on January 23, 2003, with murder in the first degree, in violation of § 565.020, RSMo 2000. On September 8, 2003, Defendant filed a motion to suppress the evidence that was seized when the search warrant was executed. As it relates to the issues in this appeal, Defendant argued in his motion to suppress that the supporting affidavit "reveals a lack of factual information to establish probable cause to believe the described evidence of a crime to be at the location to be searched."

A hearing was held on Defendant's motion to suppress on September 18, 2003. Following that hearing, but on the same day, the State filed a motion to reopen evidence and argument on Defendant's motion to suppress. Within its motion, the State contended that, at the hearing, it "was precluded from offering testimony or argument on the issue of 'good faith' of the officer in applying for and relying upon the warrant." Therefore, the State requested that the court reopen the hearing to allow further testimony and legal argument on the issue. The State filed suggestions in opposition to Defendant's motion to suppress on September 22, 2003.

The court held a hearing on the State's motion to reopen the evidence and argument on September 30, 2003. The State specified that it was prepared to argue its motion to reopen, but not to put on any evidence, unless the court ruled "that we're going to reopen [the hearing]."

The State and defense counsel made their arguments in favor of, or opposition

to, the motion to reopen, after which the court indicated:

> Well, you know, first, I think I have to decide whether or not to sustain [defense counsel's] motion to suppress or, ... the search warrant. And to me that is inside the four corners of the document.
>
> Now, as to whether you [the State] can get it in, if in theory I do sustain that motion and find that the warrant was not properly issued, and you then try to find some other way to get that evidence in, good faith, or however you want to do it.
>
> I'm—I'm trying to follow exactly—you know, the only reason we're having this discussion is we all know this is a very, very, very close issue on whether this warrant should have been issued.

Near the end of the hearing, the court noted:

> Now, if I do rule that the warrant should not have been issued, then I will give you [the State] a chance to then have another hearing to try to say that there is a way to get that evidence in. Obviously, ... I'm not going to cut you off on that issue at all, okay.

The State replied, "That's fine, Judge."

On October 14, 2003, the judge signed an order entitled "Overview of the Fourth Amendment," in which the court sustained Defendant's motion to suppress the evidence seized pursuant to the search warrant because the affidavit did not establish probable cause for the search. According to the court, "[t]he problem with the affidavit in this case is there is not a single fact that shows [Defendant] may have been involved with this crime." Although signed on October 14, 2003, and denoted in the docket as entered on that date, the document itself is marked as filed on October 16, 2003.

On October 15, 2003, a hearing was held on an unrelated motion, Defendant's motion to reduce bond. After hearing arguments on that motion, the court asked the State if it wanted to present evidence on the issue of the good faith exception associated with the search warrant, as the State had indicated in the earlier hearing on its motion to reopen that it "wanted to be able to present evidence if we got to that issue." The State noted that it would "not seek a further hearing on that issue[,] .... [b]ut [would] ... pursue the appeal on the [c]ourt's ruling on the motion." After additional discussion, the State reiterated that it would "forgo that hearing, and pursue both issues [probable cause and good faith exception] in the Court of Appeals."

Defense counsel questioned whether the State intended to argue on appeal that it was precluded from raising the good faith issue or whether it was "waiving the presentation of that issue[.]" The judge responded, "I would be very surprised if I hear that the brief contained facts that the judge denied them the—the right to file—or to produce additional evidence, especially after we talked about it with [the assistant prosecutor] and today when I said I'm willing to give the State that hearing." The State indicated that it would not argue on appeal that the court precluded it.

### Discussion

The State raises one point, in which it argues that the trial court erred in granting Defendant's motion to suppress. The State bases its argument on two contentions. First, is that the supporting affidavit established probable cause. Second, even if the affidavit failed to establish probable cause, the State contends that suppression of the evidence was proscribed by the good faith exception recognized in *United States v. Leon, supra,* because "the

affidavit was not 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " Within the argument portion of its brief, the State asserts that it raised the good faith issue in response to Defendant's motion to suppress and that the trial "court promised that it would grant the state a hearing on this question if it found that the warrant application did not state probable cause . . . , but it failed to do so[.]"

*Standard of Review*

The State points to a possible discrepancy in the standards of review applied to similar cases by the Missouri Supreme Court and the three districts of the Missouri Court of Appeals. To clarify the appropriate standard of review, as recognized by the Southern District of this Court, a discussion of the standards of review utilized in cases involving both searches executed pursuant to a warrant and warrantless searches is necessary.

In *State v. Berry,* 801 S.W.2d 64 (Mo. banc 1990), the Missouri Supreme Court outlined the appropriate standard of review in a case in which there was an initial determination that probable cause existed to issue a search warrant, and a trial court ruled on a defendant's motion to suppress the evidence seized pursuant to the execution of that search warrant. *Id.* at 65–66. In *Berry,* the trial court initially overruled the defendants' separate motions to suppress, finding that, although probable cause was not established, the law enforcement officers who executed the warrant "acted in good faith reliance on the warrant." *Id.* at 65. The case proceeded to trial and the defendants were convicted; however, in response to the defendants' motions for new trial, the trial court reconsidered its earlier ruling on the motions to suppress and determined that probable cause had not been established, and also that the good faith exception did not apply. *Id.*

On appeal, the Missouri Supreme Court indicated that although the meaning of probable cause was a legal issue, the existence of it in a particular case was a question of fact; thus, appellate review of whether probable cause existed was not *de novo. Id.* at 66. The Supreme Court stated that great deference should be given to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and only if that determination was clearly erroneous, would the Court reverse. *Id.* Further, the neutral magistrate was to determine probable cause based on the totality of the circumstances, and make a "practical, commonsense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found." *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).[1]

The Missouri Supreme Court determined that, given the totality of the circumstances, a neutral and detached magistrate could have made a practical,

---

1. *State v. Berry,* 801 S.W.2d 64 (Mo.banc 1990) and other Missouri cases sometimes refer to the judge who made the initial determination of probable cause as a magistrate. The term is used in the Fourth Amendment of the United States Constitution and in cases such as *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Following major reform of Article V of the Missouri Constitution in 1979, magistrate courts were abolished and their jurisdiction transferred to the circuit courts. *See B.C. National Banks v. Potts,* 30 S.W.3d 220, 221 (Mo.App.2000); *see also State v. Williams,* 46 S.W.3d 35, 38 (Mo. App.2001). Thus, although there are no longer magistrate judges within the Missouri court system, any use of the term magistrate in the cases cited or in this opinion simply refers to the issuing judge, or the judge who rendered the initial determination of probable cause and issued the search warrant.

commonsense decision that a fair probability existed that evidence of a crime would be found at the location. *Berry*, 801 S.W.2d at 67. Therefore, according to the Court, the trial court erred in sustaining the defendants' motions to suppress. *Id.* Nowhere in the case does the Missouri Supreme Court discuss deference on review to the trial court and its ruling.

In another Missouri Supreme Court case decided the same year as *Berry*, the issue on appeal was the constitutional validity of a search warrant leading to a defendant's conviction on two counts of possessing controlled substances. *State v. Laws*, 801 S.W.2d 68, 68 (Mo.banc 1990). In *Laws*, there was an initial judicial determination of probable cause to issue the search warrant, and the trial court denied the defendant's motion to quash the warrant and suppress the evidence, finding that, although no probable cause existed, the good faith exception applied. *Id.* at 69.

The Missouri Supreme Court stated that it was the duty of the judge making the initial judicial determination to make a practical, commonsense decision, given the totality of the circumstances as presented in the supporting affidavit, whether a fair probability existed that evidence of a crime would be found at the location. *Id.* According to the Missouri Supreme Court, meeting the fair probability standard did not involve establishing the presence of evidence of a crime at a *prima facie* level, or by the preponderance of the evidence standard, or beyond a reasonable doubt. *Id.* at 70.

The Missouri Supreme Court examined the four corners of the supporting affidavit to determine probable cause, noting that under its reading of the United States Supreme Court *Gates*, case, it found no indication "that an appellate court may look beyond the affidavit in determining whether there was probable cause to search." *Laws*, 801 S.W.2d at 70 n. 1. The Missouri Supreme Court, citing to *Gates*, noted the duty of a reviewing court was "simply to ensure that the [judge] had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 69. Further, as indicated in *Berry*, reviewing courts are to accord the initial judicial determination great deference. 801 S.W.2d at 70. Other than the statements referenced above regarding the role of a reviewing court, similar to *Berry*, the Missouri Supreme Court in *Laws* made no specific indication of deference on review to the trial court's ruling.

The standard of review from the *Berry* case is cited in another Missouri Supreme Court case, *State v. Baker*, 103 S.W.3d 711, 720 (Mo.banc 2003). In *Baker*, the trial court denied the defendant's motion to suppress, and the issue of whether probable cause existed for the search warrant was raised on appeal following the defendant's conviction. *Id.* at 719.

In *Baker*, the Missouri Supreme Court reiterated that, on review, great deference must be given to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and that reversal was only appropriate if that initial determination was clearly erroneous. *Id.* at 720. Further, the initial determination of probable cause should be based on the totality of the circumstances set forth in the supporting affidavit, and the issuing judge must make a practical, commonsense decision whether, given that totality of circumstances, there is a fair probability that evidence of a crime will be found at the location noted in the affidavit. *Id.*

At the Southern District of the Missouri Court of Appeals, we have applied the standard of review outlined by the Missouri Supreme Court in *Berry* and *Laws*,

and subsequently utilized in *Baker*. In *State v. Cornelius*, 1 S.W.3d 603 (Mo.App. 1999), the Southern District addressed a situation in which a defendant argued in the appeal following his conviction that the trial court's denial of his motion to suppress was error. *Id.* at 605.

This Court stated that when reviewing a motion to suppress based on an insufficient warrant, we give great deference to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and reverse only if that determination is clearly erroneous. *Id.* In our review of whether the issuing judge's determination was clearly erroneous, we consider the four corners of the supporting affidavit. *Id.*

Probable cause is to be determined by considering the totality of the circumstances, "and only the probability, not a prima facie showing, of criminal activity, is the standard by which the existence of probable cause is measured." *Id.* Similar to as stated in the cases above, the issuing judge should make a practical, commonsense decision of whether there is a fair probability that evidence of a crime will be found at the location. *Id.*

We noted that the supporting affidavit "should be weighed as understood by those versed in law enforcement and not in terms of library analysis by scholars .... [as][a] grudging or negative attitude toward warrants by reviewing courts is inconsistent with the Fourth Amendment's preference for searches by warrant; and courts should not invalidate warrants by interpreting affidavits in a hypertechnical rather than common sense manner." *Id.* (quoting *State v. Hill*, 854 S.W.2d 814, 818 (Mo.App.1993)). Further, even in cases where the sufficiency of the affidavit is marginal, probable cause should be liberally determined by the preference for warrants. *Cornelius*, 1 S.W.3d at 607.

The standard we applied within *Cornelius* did also include that a trial court's ruling should be sustained so long as it is plausible, in light of the record viewed in its entirely, even if the reviewing court might have weighed the evidence differently if it were the trier of fact. *Id.* In *Cornelius*, the trial court denied the defendant's motion to suppress, finding probable cause existed. *See id.* at 604.

In 2003, prior to the Missouri Supreme Court decision in *Baker*, the Southern District addressed another case in which the trial court had denied a defendant's motion to suppress. *State v. Berry*, 92 S.W.3d 823, 828 (Mo.App.2003). We stated the same standard regarding the duty of the issuing judge in terms of determining probable cause given the totality of the circumstances and of making a practical, commonsense decision. *Id.* at 830–31. Also, probable cause is to be determined by considering the four corners of the application for the search warrant and supporting affidavits. *Id.* at 830.

Similar to as in *Cornelius*, we indicated that our review of a trial court's denial of a defendant's motion to suppress is based on the whole record and the totality of the circumstances surrounding the trial court's decision, and that we would affirm the trial court's ruling if it was supported by substantial evidence. *Berry*, 92 S.W.3d at 828. Further, although the facts are reviewed under a clearly erroneous standard, we stated that whether the Fourth Amendment had been violated was a question of law that we would review *de novo*. *Id.*

Since the holdings of the Missouri Supreme Court cases in *Berry* and *Laws*, yet prior to the Missouri Supreme Court's decision in *Baker*, the Western District of the Missouri Court of Appeals has also addressed situations in which a search war-

rant was issued following an issuing judge's determination that probable cause existed. Within these cases, the Western District has taken the opportunity to state its standard of review.

In *State v. Williams*, 9 S.W.3d 3 (Mo. App.1999), a search warrant was issued following an initial determination that probable cause existed and a trial court later overruled the defendant's motion to suppress the evidence seized. *Id.* at 8–9. On appeal, the Western District noted that it was not reviewing the denial of the motion to suppress, because it was a ruling on a pre-trial motion and the defendant failed to object to the admission of the evidence at trial, but that it instead was reviewing the admission of the evidence at trial for plain error. *Id.* at 11.

Referring primarily to the standard outlined in the Missouri Supreme Court's decision in *Berry*, the Western District uses the same standard, including giving great deference to the initial judicial determination of probable cause and that the Court would reverse only if that determination was clearly erroneous. *Williams*, 9 S.W.3d at 13. The judge's duties in determining probable cause, and the definition and standard of fair probability, are also the same as noted in the cases discussed above. *Id.* at 14. The Western District also noted that even in cases where the sufficiency of the affidavit is marginal, probable cause should be liberally determined based on the preference for warrants. *Id.* at 17.

In a case decided by the Western District in 2002, the trial court granted the defendant's motion to suppress. *State v. Trenter*, 85 S.W.3d 662, 668 (Mo.App.2002). The Court stated that it would review the trial court's ruling only to determine whether the evidence was sufficient to support the ruling, and view the facts and any reasonable inferences in the light most favorable to the ruling. *Id.*

In its discussion of the appropriate standard of review, the Western District noted that the Missouri Supreme Court held in *Berry* and *Laws* that a reviewing court must give great deference to the initial judicial determination of probable cause. *Trenter*, 85 S.W.3d at 668–69. The Western District determined that, since the case before it involved the issuance of a warrant, review of the probable cause determination was not *de novo*. *Id.* at 669. The Court concluded that its standard of review of the probable cause issue was a balance—that it would review the trial court's granting of the motion to suppress for clear error but, at the same time, give great deference to the issuing judge's initial determination of probable cause. *Id.*

In a 2003 decision, the Western District reviewed the denial of a defendant's pre-trial motion to suppress, because the defendant had objected to the admission of the evidence at trial. *State v. Willis*, 97 S.W.3d 548, 553 (Mo.App.2003). According to the Western District, appellate review of the motion to suppress evidence was limited to determining whether the trial court's decision was supported by substantial evidence and all evidence and reasonable inferences would be viewed in the light most favorable to the trial court's ruling. *Id.*

As in the *Williams* and *Trenter* cases, the Western District stated that it would give great deference to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and reverse only if that determination is clearly erroneous. *Willis*, 97 S.W.3d at 553. However, the Western District opinion in *Willis* then defines "clearly erroneous" by stating: "The trial court's decision is clearly erroneous if this court is left with a definite and firm belief a mistake has

been made." *Id.* (internal citation and quotations omitted). All other aspects of the standard of review are similar to as stated in the cases above.

■ The review of the trial court's ruling in a motion to suppress under the clearly erroneous standard, where a search warrant was issued after the issuing judge determined probable cause existed, appears only in the Western District cases on *Trenter* and *Willis.* Reviewing a trial court's ruling for clear error is appropriate for cases involving a warrantless search, and that standard of review is used consistently by the Eastern, Southern, and Western Districts of the Missouri Court of Appeals. *See State v. Hoyt,* 75 S.W.3d 879, 882 (Mo.App.2002); *State v. Tackett,* 12 S.W.3d 332, 336 (Mo.App.2000); *State v. Leavitt,* 993 S.W.2d 557, 560 (Mo.App. 1999); *State v. Glastetter,* 819 S.W.2d 774, 775 (Mo.App.1991).

However, we do not adopt the use of that standard in cases where an initial judicial determination has been made by a neutral and detached magistrate or issuing judge. In such cases, which is the situation we have before us here, we will reverse only if the initial determination by the issuing judge that probable cause exists, based on the totality of the circumstances, is clearly erroneous. Reviewing the initial judicial determination for clear error under these circumstances, but not applying the clear error standard to the trial court's ruling, does not conflict with the standard of review stated in the Southern District's cases of *Cornelius* and *Berry.*

Those cases are distinguished from the case at bar because they involved a denial of the defendant's motion to suppress, and in such cases giving deference to the trial court's ruling by sustaining it so long as it is plausible, in light of the record viewed in its entirety, even if the reviewing court might have weighed the evidence differently if it were the trier of fact, or affirming the trial court's ruling if it was supported by substantial evidence, based on the whole record and totality of the circumstances, is appropriate. *See Cornelius,* 1 S.W.3d at 605; *Berry,* 92 S.W.3d at 828.

■ Thus, here we will give great deference to the initial judicial determination of probable cause and will reverse only if that determination is clearly erroneous. *Berry,* 801 S.W.2d at 66. The duty of the issuing judge is to make a practical, commonsense decision and determine whether probable cause exists based on the totality of the circumstances as set forth in the supporting affidavit. *Laws,* 801 S.W.2d at 69. Probable cause means that there is a fair probability that evidence of a crime will be found at the location. *Berry,* 801 S.W.2d at 66. For a fair probability, it is not necessary to establish the presence of evidence of a crime *prima facie,* or by a preponderance of the evidence, or beyond a reasonable doubt. *Laws,* 801 S.W.2d at 70.

■ We review whether the issuing judge's determination was clearly erroneous by looking at the four corners of the search warrant application and supporting affidavits. *Id.* Consideration of a supporting affidavit is accomplished by weighing it as it would be understood by a law enforcement official and not by someone with a legal education who conducts the library analysis of a scholar, keeping in mind that a grudging or negative attitude toward warrants by reviewing courts is inconsistent with the Fourth Amendment's preferences for searches by warrants; therefore, we will not invalidate a warrant by considering affidavits in a hypertechnical manner, but rather interpret them in a commonsense manner. *Cornelius,* 1 S.W.3d at 605. Even if the sufficiency of the affida-

vit is marginal, we will determine the case based largely on the preference to be accorded to warrants. *Id.* at 607.

We review the facts under a clearly erroneous standard, but review the issue of whether the Fourth Amendment was violated as a question of law that is reviewed *de novo. Berry,* 92 S.W.3d at 828. Thus, overall our standard of review here is essentially *de novo,* with great deference given to the initial judicial determination of probable cause.

*Affidavit*

The supporting affidavit for the search warrant of Defendant's home is presented below. (Any references to dates of birth have been omitted.)

I, Cpl. Richard Counts of the Springfield Police Department, being duly sworn, appear before the undersigned Judge authorized to issue warrants in criminal cases and make this Affidavit in support of the issuance of a Search Warrant to search for the following evidence: firearms, ammunition associated with firearms, shell casings, projectiles, any evidence associated with a firearm discharge including gun shot residue, blood, blood stained items, shoes and/or foot wear capable of leaving an impression, mud and/or soil samples from shoes and/or footwear, gun shot residue from the person of [Defendant] is/are now being kept/held in Christian County, Missouri in/on a white, single family dwelling with a tin roof, commonly referred to as 1476 North Road. The search is to include the residence, all outbuildings and garage, and any vehicles on the search situs or immediately adjacent thereto. [Vehicles and license numbers listed.]

I believe that the evidence is now located upon the described place based on the following facts: I, Richard Counts, have been a police officer employed by the Springfield Police Department for seventeen years. I have been assigned to the Criminal Investigations Division for over three years. I am currently assigned to the Major Crime Response Team. Previous to this assignment, I have had assignments as a patrol officer, major crime investigator, and narcotics investigator. During these assignments, I have been involved in numerous criminal investigations and assisted in the execution of over 200 search warrants. I have also received extensive training and attended numerous schools and seminars regarding criminal investigations including narcotics, property crimes, burglaries, robberies, sex crimes, assaults, and homicides.

On 12-18-01 at approximately 12:21, Officer Foos of the Springfield Police Department was dispatched to 1051 S. Fremont regarding a priority check the well-being. A female had reported that she came home to the residence and discovered her husband on the floor bleeding.

Upon arrival, Officer Foos was met at the front door by a female later identified as Mary Norman. Officer Foos observed that Mary had what appeared to be blood around her mouth and on her hands. Mary told Officer Foos that she had attempt [sic] to perform CPR, however, "it did not work". Mary then asked Officer Foos to assist her.

Upon entering Officer Foos observed a white male subject lying face-up in the foyer area by the stairs. Officer Foos observed that the subject was covered in what appeared to be blood and the subject's skin was pale. Officer Foos requested fire department personnel to enter the residence and assist.

As the fire department personnel attended to the victim, Officer Foos had Mary accompany him to the dining room

area and he observed that she appeared extremely upset. Officer Foos also observed what appeared to be a large amount of pooling blood on the kitchen floor. Officer Foos also observed that the back door to the residence was open. Officer Foos observed what appeared to be blood around the back door area that led to the pool of blood on the kitchen floor that also led to where the victim was located.

As paramedics were examining the victim, they advised Officer Foos that the victim had what appeared to be a bullet wound to his chest area. Officer Foos observed that the victim did have what appeared to be a bullet wound to the chest.

Officer Foos secured the residence with crime scene tape. Officer Foos took Mary next door to a neighbor's residence where she advised him that the victim was her husband. Officer Foos was later advised that the victim, later identified as Richard Norman, was deceased.

During an interview with Mary Norman at the police department, Mary told Cpl. Neal that Richard was involved in an ongoing legal dispute regarding an inheritance from Richard's father. She reported that [Defendant] had sued Richard Norman and his other siblings in reference to the inheritance. Mary stated that she believed that Richard's brother, [Defendant], might have been involved in the death of Richard due to recent events regarding the dispute. She also reported to Neal that [Defendant] always carries a firearm in his vehicle, and owns several other firearms. She told Neal that there was some type of legal proceeding on 12–17–01 that involved the ongoing legal battle; however neither she nor Richard was required to attend.

On 12–18–01 Steve Hunsaker contacted Officer Richard Mansel. Hunsaker reported that he was in the area of 1254 E. Delmar at approximately 1145 hours when he heard what he believed were three gunshots. This address is less than two blocks from the location of the incident.

On 12–18–01 I contacted Attorney Scott Garrett who is the victim, Richard Norman's, attorney in the on going legal dispute. According to Garrett, on 12–17–01 depositions were being taken in regards to this case and [Defendant] was present during these depositions. During the day a motion that Scott Garrett had filed that was scheduled to take place on 12–19–01 bothered [Defendant]. Garrett stated that during the legal process he had discovered that [Defendant] had in his possession $103,000.00 from the estate. Garrett had filed a motion that was set on 12–19–01 to have [Defendant] ordered to place the money in an escrow account until the final disposition of this case. [Defendant] was asked to stipulate to placing the money into an escrow account. [Defendant] told Garrett that he would let him know on 12–18–01 by 1200 hours. At approximately 1230 hours Garrett had not heard from [Defendant] so he placed a call to [Defendant's] attorney, Dan Johnson. Garrett requested Dan Johnson to contact his client, [Defendant], so he would know whether to proceed with the motion. At approximately 1330 hours Garrett received a call from Dan Johnson. Johnson advised that he had talked with [Defendant]. It was reported to Garrett that [Defendant] was in the process of contacting the siblings in the case in an effort to get them to not go through with the motion and to drop it.

On 12–18–01 Sgt. Latch of the Springfield Police Department was assigned to process the crime scene for evidence. Sgt. Latch reported locating several shoe impressions in the mud outside the backdoor of the residence.

On 12–18–01 at approximately 2000 hours Cpl. Scott Kamykowski, Cpl. Allen Neal, and Christian County Deputies went to 1476 North Road, Christian County to contact [Defendant] to request an interview. Upon their arrival they found that the above-listed vehicles parked at the location. There were lights and a television on inside the residence. They knocked on the door and received no response. Officers were later able to see [Defendant] and several other subjects in the residence; however, no one would come to the door. Officers on scene later observed [Defendant] inside the residence in possession of a rifle and handgun.

Based on the above-listed information, I believe that the aforementioned evidence will be located at 1476 North Road, Christian County, Missouri.

*Analysis*

Given the standard of review, we find that, given the totality of circumstances set forth in the affidavit, the issuing judge had a substantial basis for concluding that there was a fair probability that evidence related to the murder of Richard Norman would be found on Defendant's property. We cannot find that the issuing judge's determination that probable existed in this case was clearly erroneous.

We agree with the trial judge, that it was "a very, very, very close issue on whether this warrant should have been issued." However, as indicated in our standard of review, even if the sufficiency of the affidavit is marginal, we will determine the case based largely on the preference to be accorded to warrants. *Cornelius,* 1 S.W.3d at 607.

Given that we conclude that the supporting affidavit stated sufficient probable cause to support the issuance of the search warrant, we need not address whether the good faith exception is applicable, as this was not an otherwise defective search warrant. *See Laws,* 801 S.W.2d at 71; *State v. Gordon,* 851 S.W.2d 607, 616 (Mo.App. 1993). It is also unnecessary for us to address the State's argument that it was precluded from presenting evidence on the good faith exception, although we feel it important to note that the record before us does not support the State's contention in this regard.

### Conclusion

The trial court's grant of Defendant's motion to suppress is reversed and the cause remanded for the trial court to proceed in a manner not inconsistent with this opinion.

BARNEY, P.J., concurs; GARRISON, J., concurs in result only.