The judgment of conviction and sentence of the trial court is affirmed.

PARRISH, P.J., and BATES, C.J., concur.

**STATE of Missouri, Plaintiff–Appellant,**

v.

**Jennifer M. RUSH, Defendant–Respondent.**

No. 26396.

Missouri Court of Appeals,
Southern District,
Division One.

April 29, 2005.

Cynthia R. Black, Webster County Prosecuting Attorney, Marshfield, for appellant.

Donald R. Cooley, Springfield, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

The State of Missouri ("the State") files this interlocutory appeal, pursuant to Section 547.200,[1] following the trial court's grant of Jennifer M. Rush's ("Defendant") motion to suppress evidence seized in connection with the execution of a search warrant. The trial court found that the affidavit used in support of the search warrant failed to establish probable cause for the search. The State argues that the trial court erred in that regard. Further, the State asserts that even if the warrant lacked probable cause, the police officers acted in good faith. Upon review of the record, we reverse the decision of the trial court.

On August 1, 2003, Deputy Rick Hamilton ("Deputy Hamilton") of the Webster County Sheriff's Department prepared an affidavit requesting a search warrant for Skip Lamkey's residence (the "Lamkey residence"). Deputy Hamilton's affidavit, in pertinent part, averred as follows:

I Rick Hamilton, a deputy sheriff for the Webster County Sheriff's Department, have reason to believe that certain evidence of a crime, to wit: Drug Offenses Chapter 195 RSMO is presently concealed at:

A residence located at 1310 Cedar Ridge Road, Strafford, located in Webster County. From Marshfield take Interstate 44 West to the Northview exit, take the exit and go west on the North Outer Road also known as Evergreen Road, go approx. .7 miles to Cedar Ridge Road, turn right on Cedar Ridge

Road and continue appr. 1.3 miles to driveway on right. Driveway is directly across from Jarrett Branch Road, continue down driveway to double wide trailer. Residence is known as the [Lamkey residence].

And, in support of my belief states [sic] the following

On 07–29–03 I was contacted by Springfield Police Officer Todd King. King is an officer in the Special Investigations Unit at the Department.

King said he had a proven reliable informant who made the following statements to him

Informant said he was at the [Lamkey residence] on or about 07–27–03.

Informant said at the residence he observed what he said was Red Tar Opium in the residence. Informant said he also observed Lamkey and other subjects smoking Opium in the residence.

Informant said Lamkey stated he was cooking methamphetamine on the property.

According to King the informant has provided information on different occasions that led to search warrants being obtained. King said illegal drugs were found and arrests were made from information provided by the informant. King further said the informant has made controlled drug buys for him on different occasions.

On 07–31–03 I talked to the same informant. The informant made the following statements to me:

Informant said on this past weekend he went to the [Lamkey residence]. Informant provided me with driving directions that I drove later that took me directly to the [Lamkey residence]. Informant said at the resi-

<hr>

1. References to statutes are to RSMo (2000) unless otherwise indicated.

dence he observed several Reddish/Orange rocks that he said was opium.

Informant said Lamkey and others in the residence were also smoking opium in the residence. Informant said he also saw a bag containing a white powder on a table in the residence. Informant said he recognized the powder as meth. Informant said he also saw subjects in the residence injecting meth into their arms with syringes. Informant said he estimated there to be approx. [one] ounce of meth in the residence.

Informant said he heard Lamkey and a subject named Stanley Harris talking about cooking meth using the Red phosphorus method behind the residence.

Informant said he also observed [two] machine guns in the residence. Informant said Lamkey was bragging about the guns being fully automatic weapons.

Informant said Lamkey offered to sell him some meth and told him he would even have more later in the week if he wanted more.

On 7–31–03 I talked to another confidential informant who made the following statements:

Informant said she was at the [Lamkey residence] this past weekend.

Informant said she observed what Lamkey was saying was red tar opium. Informant said the subjects were smoking the opium in the residence. Informant said she also saw a bag containing a white shiny powder she said was methamphetamine.

Informant said she heard Lamkey making statements about Stanley Harris and him cooking meth using the red and black method behind the residence.

Informant said there is an old house behind the residence that Lamkey said was his and was going to bulldoze the house down soon.

I have received information in the past from informants Skip is cooking methamphetamine using the red phosphorus method at his residence located at Strafford. I have also received information from a store in Springfield that said a person who identified himself as Skip Lamkey purchased several cases of Matches from the store.

The ends of the matches are used as an ingredient in the manufacture of methamphetamine using the red phosphorus method.

After reviewing the application and the affidavit, an associate circuit judge found probable cause and issued a search warrant for Lamkey's residence at 1310 Cedar Ridge Road. Pursuant to the warrant, police officers searched the home and found drug paraphernalia, marijuana, methamphetamine, opium and assault rifles. Defendant was present at the residence when the search warrant was served. After being read her *Miranda* rights,[2] Defendant told Deputy Hamilton that Lamkey was her boyfriend and she lived with him at 1310 Cedar Ridge. She also reportedly told him that methamphetamine was in the residence and that it was both hers and Lamkey's. The State charged Defendant with the class C felony of possession of a controlled substance in violation of Section 195.202.

Defendant filed a motion to suppress the evidence seized at Lamkey's residence contending the warrant failed to state adequate corroborating evidence from the two informants to establish probable cause to

---

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

search the premises. The trial court sustained Defendant's motion and suppressed the evidence. The State then filed this interlocutory appeal.

The State sets forth two allegations of error on appeal: first, the trial court erred in suppressing evidence because sufficient probable cause existed to issue the search warrant; and second, that, even if sufficient probable cause did not exist, the good-faith exception to the exclusionary rule applies.

■ In reviewing a motion to suppress, we give great deference to the initial judicial determination of probable cause made at the time of the issuance of the search warrant. *State v. Baker*, 103 S.W.3d 711, 720 (Mo. banc 2003); *State v. Middleton*, 995 S.W.2d 443, 457 (Mo. banc 1999); *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). We will only reverse if that determination is clearly erroneous. *Baker*, 103 S.W.3d at 720.

■ Defendant asserts that our review should be the same as that used by the Western District in *State v. Trenter*, 85 S.W.3d 662 (Mo.App. W.D.2002). There the court reviewed the trial court's granting of the motion to suppress for clear error while at the same time giving great deference to the issuing judge's initial determination of probable cause. *Id.* at 669. We do not agree that is the appropriate standard here. The review of a trial court's ruling in a motion to suppress under a clearly erroneous standard is appropriate only in cases involving warrantless searches. *State v. Norman*, 133 S.W.3d 151, 158–59 (Mo.App. S.D.2004); *see State v. Hoyt*, 75 S.W.3d 879, 882 (Mo.App. W.D. 2002); *State v. Tackett*, 12 S.W.3d 332, 336 (Mo.App. W.D.2000); *State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App. W.D.1999); *State v. Glastetter*, 819 S.W.2d 774, 775 (Mo.App. E.D.1991).

In cases where an initial judicial determination has been made by a neutral detached magistrate or issuing judge, we reverse only if the initial determination that probable cause exists is clearly erroneous. *Norman*, 133 S.W.3d at 159. Therefore, we will review giving great deference to the initial judicial determination of probable cause and will reverse only if that determination, based on the totality of the circumstances, is clearly erroneous. *Id.*

■ There is a strong preference within the Fourth Amendment for searches conducted pursuant to a warrant. *State v. Norman*, 133 S.W.3d 151, 157 (Mo.App. S.D.2004). Reviewing courts, therefore, should not quash warrants by construing affidavits in a "hypertechnical rather than a commonsense, manner." *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 547 (1983). As stipulated in *Gates,*

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... [concluding]" that probable cause existed.

462 U.S. at 238–39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. Therefore, to determine whether the initial judge's determination of probable cause was clearly erroneous, we look at the totality of the circumstances surrounding the search warrant. *Baker*, 103 S.W.3d at 720; *State v. Ford*, 21 S.W.3d 31, 34 (Mo.App. E.D.2000). "[P]robable cause must be found within the four corners of the search warrant application and supporting affidavits." *State v. Laws*, 801 S.W.2d 68, 70 (Mo. banc

1990); *see also Berry*, 92 S.W.3d at 830. "[P]robable cause is 'a fair probability that contraband or evidence of a crime will be found.'" *Berry*, 801 S.W.2d at 66; *State v. Dowell*, 25 S.W.3d 594, 605 (Mo.App. W.D. 2000). The standard is only the probability, rather than a prima facie showing, of criminal activity. *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546.

Defendant argues the affidavit lacked probable cause because it was based upon information from unnamed informants without corroboration by independent police investigation. Common sense is a key ingredient in considering the absence or presence of probable cause. *State v. Hampton*, 959 S.W.2d 444, 451 (Mo. banc 1997). Deputy Hamilton's affidavit was not signed by the informants and, therefore, the statements attributed to the informants are hearsay. *See State v. Cornelius*, 1 S.W.3d 603, 606 (Mo.App. S.D.1999). Probable cause can be established based on hearsay if there is a substantial basis for crediting it. *Ford*, 21 S.W.3d at 35. We have noted in the past that "[t]ips by informants found to be reliable in the past are sufficient information alone to support an issuing judge's finding of probable cause." *Cornelius*, 1 S.W.3d at 606 (quoting *State v. Vega*, 875 S.W.2d 216, 218 (Mo.App. E.D.1994)).

Furthermore, "[w]hen the information upon which the warrant is based comes from one who claims to have witnessed a crime ... the information carries with it indicia of reliability and is generally presumed to be reliable." *Baker*, 103 S.W.3d at 720 (quoting *State v. Dawson*, 985 S.W.2d 941, 950 (Mo.App. W.D.1999)). Missouri courts have found sufficient probable cause when an informant's personal knowledge is corroborated by other sources. *Berry*, 801 S.W.2d at 66; *see also Cornelius*, 1 S.W.3d at 606.

In the instant case, there are several grounds upon which the hearsay in question can properly be credited. First, the first informant was found to be a reliable informant, one whom officers had used in the past for controlled drug buys and who had provided information which lead to search warrants being obtained and arrests being made. The informant provided the same information to Deputy Hamilton as he did to Officer King about the presence of red tar opium and methamphetamine at the Lamkey residence. The informant reportedly told Deputy Hamilton that while he was at the Lamkey residence, he heard Lamkey and Stanley Harris discussing cooking methamphetamine there. The reliable informant also provided driving directions to the Lamkey residence. These directions, which Deputy Hamilton followed, led to the residence known as the Lamkey residence.

The second informant corroborated the first informant's information about criminal activity at the Lamkey residence. This informant was reported to have said that she observed red tar opium and methamphetamine in the Lamkey residence and that Lamkey and Stanley Harris made statements about cooking methamphetamine.

Deputy Hamilton had also received information in the past from informants that Lamkey was producing methamphetamine using the red phosphorus method at his residence located at Strafford. This information was coupled with the tip from a Springfield business owner that an individual, identifying himself as Skip Lamkey, had purchased several cases of matches from the store. Investigator Hamilton noted in the affidavit that the ends of matches are used as an ingredient in the manufacture of methamphetamine using the red phosphorus method. The fact the hearsay reports in the affidavit came from multiple sources and all tend to establish the same things, that methamphetamine,

as well as opium, could be found there, further suggests that each independent source was credible.

We hold that under the totality of the circumstances, the issuing judge had a substantial basis for concluding there was a fair probability that contraband would be found at the Lamkey residence. We cannot find that the issuing judge's determination that probable cause existed in this case was clearly erroneous. Since the supporting affidavit stated sufficient probable cause to support the issuance of the search warrant, we need not address whether the good faith exception is applicable as this was not an otherwise defective search warrant. *Laws*, 801 S.W.2d at 71; *Norman*, 133 S.W.3d at 162. The trial court's grant of Defendant's motion to suppress is reversed and the cause remanded for the trial court to proceed in a manner not inconsistent with this opinion.

PREWITT, J., and RAHMEYER, J., concur.