STATE of Missouri, Respondent,

v.

Zachary A. JOHNSON, Appellant.

No. SD 31437.

Missouri Court of Appeals,
Southern District,
Division One.

July 17, 2012.

---

Erika R. Eliason, Columbia, MO, for Appellant.

Chris Koster, Attorney General and Timothy A. Blackwell, Assistant Attorney General, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., J.

Zachary A. Johnson ("Johnson") appeals his convictions on four counts of possession of child pornography. Johnson contends the trial court erred in not suppressing the photographs and videos found on his computer and data devices, and in allowing the testimony of Sergeant Paul Cordia ("Sergeant Cordia") that he believed the suspect images were child pornography. Finding no merit to Johnson's claims, we affirm.

### Factual and Procedural History

A bench trial was held on February 17, 2010. Viewed in the light most favorable to the trial court's judgment, the evidence adduced at trial revealed the following.

On March 20, 2009, Johnson was staying in a hotel in Columbia with three boys attending a state basketball championship. One of the boys reported that he was in bed with Johnson when he awoke in the early morning hours to find Johnson rubbing his penis. The next day, the boy's father contacted Sergeant William Cooper ("Sergeant Cooper"), of the Missouri Highway Patrol, and reported the incident. Sergeant Cooper interviewed the boy, the boy's uncle—who had arranged the trip—and the two other boys who had been in the hotel room.

On March 24, 2009, based on the information he had gathered, Sergeant Cooper sought a search warrant for Johnson's residence. The prosecutor filed an "Application for Search Warrant to Authorize a Search and Seizure of Property, Articles, Materials, or Substances that Constitute Evidence of the Commission of a Criminal Offense" ("Application") stating that upon information and belief "certain property, articles, materials, or substances that constitute evidence of commission of the offense of **"Possession of Child Pornography"** were being held and kept at Johnson's residence in Sikeston. Such items included:

any and all devices capable of use in the storage, transmission and/or receipt of electronic data, including but not limited to: computers, modems, cameras, mobile computing devices including PDA's and cellular telephones;

. . . .

any and all images depicting sexual conduct or sexual contact . . .;

any and all images or partial images of persons under the age of eighteen, in various states [of] undress[;]

. . . .

[a]ny items that are related to the performance of sexual acts such as but lim-

ited [sic] to condoms, sex toys, or lubricants.

Sergeant Cooper's "Affidavit Supporting Search Warrant" ("Affidavit") stated that Sergeant Cooper had been in law enforcement since 1990, he had over 1,800 hours of certified law enforcement training, and had training and experience in the field of investigating crimes against persons, Internet crimes against children, and computer-related crimes. Sergeant Cooper had been "conducting an investigation into a criminal allegation of crimes against a child."

The Affidavit further stated that on March 21, 2009, Sergeant Cooper was approached by "the father of a child," and the father reported his son was sexually assaulted by Johnson on March 20, 2009, in a hotel room while attending the state championship games in Columbia. The Affidavit related that Sergeant Cooper conducted an interview with the victim of the assault, a fifteen-year-old male. Victim explained he awakened in the early morning hours of March 20, 2009, and believed he was experiencing a dream where his penis was being touched. However, the feeling stopped when he awoke but he had an erection. Victim, convinced he had dreamed this feeling, rolled away from Johnson and closed his eyes to go back to sleep. Johnson said, "Hey," and victim asked, "What?" Johnson then asked, "Do you want me to finish?" and victim said, "Hell, no." Victim said he turned back away and felt Johnson's foot rubbing the back of his leg. Victim said he then got out of bed and got into his friend's bed. Victim stated later that morning he showered and was coming out of the bathroom and saw Johnson sitting at the desk on his laptop computer. Johnson asked, "What's up?" Victim confronted Johnson about rubbing his penis, to which Johnson apologized and admitted that what he did was

wrong and inappropriate. Victim stated on the previous day, Johnson was photographing his friends while they were watching TV in their room.

Sergeant Cooper also attested in the Affidavit that he interviewed victim's uncle:

[The uncle] stated in hindsight some of the conversations he had with the suspect were ominous. He stated when he asked the suspect what his motivation for taking sporting pictures were, the suspect explained he had an upstart photography business. He said the suspect further stated he wanted to specialize in cameo photography. He asked the suspect what that was and [the suspect] stated it's where a parent introduces [him] to their children, he gets to know them, and then he takes their pictures without their knowledge.

The Affidavit further stated:

Based upon my experience and training, I am aware that evidence of child pornography such as those obtained by sexual predators frequently reside on the computers utilized for many months or longer. This is true due to the nature of computer data, how it is created, stored and deleted. This is true even when a computer user attempts to delete information from a computer, as residual data remains on the computer and is often retrievable by the use of specialized forensic tools. I believe that evidence of the offense of Possession of Child Pornography is recoverable from the computer(s) utilized in the above-described conversations.

The Affidavit then stated that based upon Sergeant Cooper's knowledge, training, and experience, he was aware that searching and seizing information from computers often requires agents to seize most or all electronic storage devices, along with related peripherals, to be

searched later by a qualified computer expert in a laboratory or other controlled environment. Sergeant Cooper requested "the Court's permission to seize all items capable of storing data electronically or magnetically that are believed to contain some or all of the evidence described in the warrant."

On March 24, 2009, a "Search Warrant" ("Warrant") was issued authorizing a search of Johnson's residence for the items described in the Application. On March 25, 2009, Sergeant Cooper and other law enforcement officers executed the warrant. During the search at Johnson's residence, Johnson admitted to the officers that he had computer images of nude boys with erect penises and that there could be as many as a thousand images. The officers seized two desktop computers, two laptop computers, and other hard drives or storage devices. The officers also seized a bag containing KY jelly, penis mufflers, and diapers. Upon questioning, Johnson claimed the diapers were for him and that he fit into them. Johnson informed the officers that a Dell tower computer would be the only one on which they would find items of a sensitive nature. Sergeant Cooper turned over the computers and media items to Sergeant Cordia, who was assigned to the Missouri Highway Patrol's computer forensics unit. Sergeant Cordia retrieved over 500 still images and approximately 20 videos from one of the computers.

Before trial, Johnson filed a motion to suppress all photographs and videos or other evidence found on his computer and data devices. Johnson asserted the Affidavit failed to articulate probable cause for the search. The trial court denied the motion to suppress.

At trial, twenty still images (State's Exhibits 1–20) and three videos (State's Exhibits 21, 23 and 24) were admitted into evidence.[1] State's Exhibits 1–20 purportedly depicted children engaged in various acts of sodomy and deviant sexual intercourse. State's Exhibits 21, 23 and 24 purportedly depicted pre-pubescent boys, as well as some males who were at least pubescent, engaged in various acts of oral sex, anal intercourse, and manual contact with another male's penis.[2]

Sergeant Cordia testified regarding the protocol he implemented after finding "suspect images":

> [Sergeant Cordia]: I am—I like to think of myself as pretty conservative on child pornography cases. I consciously decide whether or not this is a picture I want to send somebody to prison for before I include that picture in my report or video.
>
> [Prosecutor]: Okay. So not all pictures that may contain—may be suspect images are contained within your report?
>
> [Sergeant Cordia]: If they're—if they're not close enough for me to show to a jury to—for them to decide, I don't include them in my report.

At trial, Sergeant Cordia was shown the images and videos for each of the State's exhibits and he was asked if he believed it was a suspect image or suspect video of child pornography. Defense counsel objected on grounds that Sergeant Cordia's belief was irrelevant; the trial court over-

---

1. These exhibits, however, were not deposited with this Court pursuant to Rule 81.16. "When an exhibit is not filed with an appellate court, its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v.* *Davis*, 242 S.W.3d 446, 449 n. 1 (Mo.App. S.D.2007).

2. Johnson raises no challenge to the sufficiency of the evidence establishing that he possessed "child pornography."

ruled the objection. Defense counsel raised a continuing objection to the images (State's Exhibits 1–20) based on his motion to suppress and Sergeant Cordia's opinion that the subject matter was pornography. The trial court overruled the objection and admitted State's Exhibits 1–20 into evidence. When the State offered the videos into evidence (State's Exhibits 21, 23 and 24), defense counsel stated he maintained his previous objections. The trial court overruled the objection and admitted State's Exhibits 21, 23 and 24 into evidence.

The trial court found Johnson guilty of one count of the class C felony of possession of child pornography for the images (Count 1), and three counts of the class B felony of possession of child pornography for the videos (Counts 2–4). The trial court sentenced Johnson to seven years in the Missouri Department of Corrections on Count 1, and ten years on each of Counts 2–4, all to run concurrently with each other. This appeal followed.

Johnson contends the trial court erred in overruling: (1) Johnson's motion to suppress evidence and in admitting into evidence "State's Exhibits 1–23"[3] in that the Affidavit offered in support of the Application failed to establish probable cause; and (2) Johnson's objection to Sergeant Cordia's testimony that he believed the suspect images were child pornography in that this was impermissible opinion testimony as to Johnson's guilt. The primary issues pertinent to our resolution of this appeal are:

1. Was the initial determination of probable cause for the issuance of the search warrant clearly erroneous?

2. Was the admission of Sergeant Cordia's testimony improper and outcome determinative?

### Point I: Probable Cause for Warrant

First, we address Johnson's claim that the trial court erred in overruling Johnson's motion to suppress evidence and admitting into evidence the photographs and videos.

 The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures," and guarantees that "no warrant shall issue except upon probable cause supported by oath or affirmation." U.S. CONST. amend. IV. "There is a strong preference within the Fourth Amendment for searches conducted pursuant to a warrant." *State v. Rush*, 160 S.W.3d 844, 848 (Mo.App. S.D.2005). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* Therefore, this Court gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued. *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007). "In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id.* This Court will only reverse if the issuing magistrate or judge clearly erred in initially determining, from the totality of the circumstances, probable cause existed. *Id.*

**3.** Johnson's point relied on erroneously references State's Exhibits 1–23; however, it is clear from the record and his argument that he intended to reference State's exhibits 1–20 and 21, 23 and 24. The discrepancy is not material to the resolution of this appeal.

■■ " '[P]robable cause is a fair probability that contraband or evidence of a crime will be found. The standard is only the probability, rather than a prima facie showing, of criminal activity.' " *Rush*, 160 S.W.3d at 849 (internal quotations and citations omitted). Such probabilities " 'are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *State v. Henry*, 292 S.W.3d 358, 364 (Mo.App. W.D.2009) (internal citation omitted). "Search warrants, therefore, should not be deemed invalid by interpreting affidavits in a hyper technical rather than common sense manner." *Id.* (internal citation and quotation omitted).

■ Johnson argues the Warrant was not based on probable cause because Sergeant "Cooper's [A]ffidavit failed to make any correlation between the alleged crime against a child and the possession of child pornography." This Court disagrees.

First, the Affidavit described a father who informed Sergeant Cooper that Johnson had sexually assaulted his son in a hotel room. The Affidavit specifically identified the victim as a fifteen-year-old child. The Affidavit also related Johnson was photographing victim and his friends in the very same hotel room. Further, Johnson was working on his laptop computer in the hotel room when victim came out of the shower. These activities involving photography and use of his computer were in close-time proximity and in the same hotel room where Johnson fondled the victim. Additionally, Johnson slept in the same bed as victim and victim was showering and presumably changing clothes in the hotel room, all at times when Johnson was present and had access to his camera and computer.

Sergeant Cooper's Affidavit also described his interview with victim's uncle where the uncle described some of his conversations with Johnson as "ominous." The uncle specifically noted Johnson's "upstart photography business" and that Johnson wanted to specialize in "cameo photography" where he took pictures of children without their knowledge.

Included in the Affidavit was Sergeant Cooper's experience in "investigating crimes against persons, Internet crimes against children, and computer-related crimes," such that he was "aware that evidence of child pornography such as those obtained by sexual predators frequently reside on the computers utilized for many months or longer." While Eighth Circuit holdings are not generally binding on this Court, we find the Eighth Circuit's reasoning in *United States v. Colbert*, 605 F.3d 573, 578 (8th Cir.2010), persuasive and relevant to the facts of this case. The Eighth Circuit noted: "There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation." *Id.* Here, such a connection was explicitly confirmed by Sergeant Cooper's expertise in this area. Sergeant Cooper attested in the Affidavit he believed "that evidence of the offense of Possession of Child Pornography is recoverable from the computer(s) utilized in the above-described conversations." Taken together, the information in Sergeant Cooper's Affidavit shows a fair probability that evidence of a crime (including possible images Johnson took depicting sexual conduct or images of persons under the age of eighteen in various states of undress) would be found on Johnson's computer and electronic storage devices.

As such, the issuing judge had a substantial basis for concluding there was a fair probability that contraband and evi-

dence of criminal activity would be found at Johnson's residence. Therefore, the initial determination of probable cause was not clearly erroneous, and the trial court correctly overruled Johnson's motion to suppress the photographs and videos and did not commit any error in admitting them into evidence. Point I denied.

### Point II: Sergeant Cordia's Testimony

 Johnson alleges the trial court erred in overruling his objection to Sergeant Cordia's testimony that he believed each of the exhibits presented to the trial court were images or videos depicting child pornography. We, however, need not make a determination whether Sergeant Cordia's testimony was inadmissible because Johnson has failed to assert any prejudice resulted, and we find none in our review. This was a court-tried matter. As such, " 'we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment, unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence.' " *State v. Ernst*, 164 S.W.3d 70, 74–75 (Mo.App. S.D.2005) (quoting *State v. Bewley*, 68 S.W.3d 613, 619 (Mo.App. S.D. 2002)). " 'Absent some showing that the evidence inflamed the factfinder or diverted its attention from the issues to be resolved, the receipt of evidence, even though irrelevant and immaterial, cannot constitute prejudicial or reversible error.' " *State v. Love*, 134 S.W.3d 719, 725 (Mo. App. S.D.2004) (quoting *State v. Mills*, 809 S.W.2d 1, 4 (Mo.App. E.D.1990)). The test is whether the possibly improper admission of evidence was outcome determinative. *Love*, 134 S.W.3d at 725.

Here, the trial court made no clear and obvious statement of reliance on Sergeant Cordia's testimony in reaching its decision. Nothing in the record shows the trial court considered and *relied* upon Sergeant Cordia's testimony that the suspect images were child pornography in making its determination of guilt beyond a reasonable doubt. Additionally, Sergeant Cordia's testimony is not outcome determinative in light of the otherwise sufficient evidence (including the images themselves) that supported a finding that Johnson was guilty of the crimes charged beyond a reasonable doubt. *State v. Castoe*, 357 S.W.3d 305, 310 (Mo.App. S.D.2012). Point II is denied.

We affirm the judgment of the trial court.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.