**STATE of Missouri, Appellant,**

v.

**Cole M. HENRY, Respondent.**

**No. WD 69978.**

Missouri Court of Appeals,
Western District.

June 16, 2009.

Application for Transfer to Supreme Court Denied July 28, 2009.

Application for Transfer Denied
Oct. 6, 2009.

Mark A. Richardson and Cheryl C. Nield, Jefferson City, MO, for appellant.

Clifford W. Cornell, Jefferson City, MO, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

The State appeals the judgment of the Cole County Circuit Court granting a motion to suppress evidence obtained through execution of a search warrant. On appeal, the State argues that the affidavit supporting the search warrant was sufficient to establish probable cause. The trial court's judgment is reversed, and the case is remanded.

## Basic Background

On January 29, 2008, Jefferson City police searched the apartment of Cole Henry pursuant to a warrant obtained after information was supplied to police by James Jacobs.[1] Henry was charged with the class A felony of possession of a controlled substance (marijuana) with intent to distribute, charging him as a prior offender and a prior drug offender.

Henry filed a motion to suppress evidence claiming that the search warrant issued in his case was improper. He claimed, *inter alia,* that the warrant was in improper form and unsupported by probable cause and that the affidavit was lacking in probable cause and could not be relied upon in good faith. Following a hearing and after the parties filed suggestions in support of and in opposition to the motion to suppress, the trial court granted the motion to suppress.

The State appeals.

## The Ruling under Review

■■■ We first determine whether the appellate court reviews the initial determination of probable cause made by the *issuing judge,* or whether the appellate court reviews the *trial court's* granting of the

1. James Jacobs is not the real name of the informant identified in the affidavit and the application for a search warrant. We use the name "James Jacobs" for purposes of this opinion.

motion to suppress. Though the question of probable cause is an issue of law, review is not *de novo* but is the deferential standard of "clearly erroneous." *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990). Because there may be variations in factual inferences drawn by different judges upon consideration of the application for a warrant and the accompanying affidavits, it makes sense that deference is appropriate. *State v. Laws,* 801 S.W.2d 68, 70 (Mo. banc 1990); *State v. Neher,* 213 S.W.3d 44, 48–49 (Mo. banc 2007). But when an issuing court originally determines that probable cause exists, and a trial court later finds to the contrary, we must first decide which of the two determinations is being reviewed so that we may accord deference appropriately.

In *State v. Berry,* 801 S.W.2d 64 (Mo. banc 1990), there had been, at the time of the issuance of a warrant, an initial determination of probable cause by the issuing judge. The trial court later determined that probable cause was lacking and suppressed the evidence. The Supreme Court, in undertaking review, stated that "great deference" should be given to the determination made by the issuing judge to grant the warrant. *Id.* at .66. The Court said the determination of probable cause by the *issuing* judge should be reversed only if it was "clearly erroneous." *Id. Berry* did not announce a new rule. The Supreme Court has held for years that "[p]robable cause for the issuance of a search warrant must be judged on the basis of what was before the issuing judge." *State v. Hunt,* 454 S.W.2d 555, 558 (Mo.1970); *see also Laws,* 801 S.W.2d at 69–70; *Neher,* 213 S.W.3d at 48–49.

After *Berry* (and the case decided almost contemporaneously with *Berry, State*

*v. Laws* ) again made clear that review was to be of the determination of the *issuing* judge, some of our Missouri cases once again introduced unfortunate confusion by discussing review of the *trial* court's ruling, asserting that the standard of review is whether the *trial* court's ruling on the motion to suppress was "clearly erroneous." *See, e.g., State v. Cornelius,* 1 S.W.3d 603 (Mo.App.1999); *State v. Berry,* 92 S.W.3d 823, 828 (Mo.App.2003); *State v. Willis,* 97 S.W.3d 548, 553 (Mo.App.2003) (mentioned in the discussion of this subject in *State v. Norman,* 133 S.W.3d 151, 158 (Mo.App.2004)).

The Southern District in *Norman* noted that some of the cases have acknowledged tension over the ruling to be reviewed. 133 S.W.3d at 158. The confusion has included an incorrect belief that the standard of review of the probable cause issue "was a balance—that [the court] would review the trial court's granting of the motion to suppress for clear error but, at the same time, give great deference to the issuing judge's initial determination of probable cause." *Id. See, e.g., State v. Trenter,* 85 S.W.3d 662, 669 (Mo.App.2002).

The Southern District in *Norman* noted that the crucial distinction is between a case where the search was warrantless, and a case where a warrant had been issued. 133 S.W.3d at 159. In a case without a warrant, a "clearly erroneous" deferential standard applies to the review of the ruling of the *first* judge to pass on the matter—which happens to be the trial court (because there was no warrant). *Id.* The *Norman* court recognized, though, that when "an initial judicial determination has been made" by a neutral issuing judge (or "magistrate"),[2] *that* judge was the *first*

---

2. The cases often refer to the issuing judge as a "magistrate." In 1979, magistrate courts were abolished and their jurisdiction transferred to the circuit courts. *See B.C. Nat'l Banks v. Potts,* 30 S.W.3d 220, 221 (Mo.App. 2000). Thus, any use of the term "magis-

one to pass on the matter of probable cause. *Id.* The court in *Norman* reminded us that an appellate court "will reverse only if the *initial determination* by the issuing judge that probable cause exists, based on the totality of the circumstances, is clearly erroneous." *Id.* (emphasis added). *Norman* noted that generally the cases stating a contrary standard were cases where the trial court *had denied* a motion to suppress, in effect *agreeing* with the issuing court. *Id.* Thus, an appellate court purporting to give deference to the trial court was also thereby indirectly also giving deference to the issuing court. *Id.*

In 2007, the Missouri Supreme Court, in *State v. Neher,* reiterated the principle that the reviewing court "gives great deference to the initial judicial determination of probable cause that was made at the time the warrant issued." 213 S.W.3d 44, 49 (Mo. banc 2007). The court also added that "[b]ecause there is a strong preference in the Fourth Amendment for searches to be conducted pursuant to a warrant, a reviewing court should not quash a warrant by construing it in a hyper-technical, rather than a common-sense, manner." *Id.* "The duty of a reviewing court is simply to ensure that the issuing judge had a substantial basis for determining that probable cause for the search did exist." *Id.* "In conducting the review of whether probable cause exists, the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id.* The court will reverse only if the "issuing magistrate or judge clearly erred in initially determining, based on the totality of the circumstances, that probable cause existed." *Id.*

trate" in the cases cited simply refers to the issuing judge (the judge who rendered the initial determination of probable cause and

## Our Standard of Review

In *Laws,* 801 S.W.2d at 69, the Court stated that the judge making the initial determination on whether to issue the warrant was to make a "practical, common-sense decision," given the totality of the circumstances as presented in the supporting affidavit, whether a "fair probability" existed that evidence of a crime would be found at the location. Accordingly, we conclude that we are to review the issuance of the warrant to see if the *issuing judge* had a substantial, common-sense basis, in view of the totality of the circumstances, for determining that probable cause existed at the time the warrant was issued. *See also Berry,* 801 S.W.2d at 66. We are to reverse only if that determination was "clearly erroneous." *Id.*

## Detailed Background

The full text of the affidavit presented to Judge Sodergren in this case is:

## AFFIDAVIT SUPPORTING SEARCH WARRANT

Comes now, Curtis Finke duly sworn and under oath and states as follows:

1.  I am a detective with the Jefferson City Police Department and have been so employed for the past five years and am now assigned to the Mid–Missouri Unified Strike Team and Narcotics Group (MUSTANG).

2.  On 01–29–2008 at 0202 hours I made contact with James Jacobs as a result of executing a narcotic search warrant at his residence. As a result of that investigation James Jacobs provided the following information.

issued the search warrant). *See State v. Norman,* 133 S.W.3d 151, 155 n. 1 (Mo.App. 2004).

3. On 01–28–2008 at approximately 2200 hours James Jacobs observed approximately four pounds of marijuana inside an apartment rented by Cole Henry, DOB 01–15–1982, SS# 491–88–0463. This apartment is located at 117 Ventura Apt 8 Jefferson City, MO 65109.

4. James Jacobs has observed large amounts of marijuana at this residence in the past due to both subjects having involvement in narcotic activity.

/s/ Curtis Finke
Curtis Finke, Affiant

/s/ James Jacobs
James Jacobs, Affiant

/s/ D. Williams 1/29/08

D. WILLIAMS

Notary Public—Notary Seal

STATE OF MISSOURI

Cole County

My Commission Expires: June 4, 2008

Subscribed and sworn to before me this date: 01–29–2008.

/s/ T. Sodergren
Judge

The affidavit is signed by Detective Curtis Finke and James Jacobs. Each signed above the designation of "affiant." It is notarized by D. Williams and dated January 29, 2008. Judge Sodergren found this presentation to be satisfactory of probable cause and issued the warrant on the same day.

The trial court, Judge Joyce, on consideration of the later filed motion to suppress, regarded the application and supporting papers with skepticism, noting:

> Despite his signature on the affidavit, Jacobs was not a direct affiant because the affidavit was prefaced in its initial paragraph by "Comes now, Curtis Finke" and not "Comes now, James Jacobs."

The trial court also added that Jacobs "was not a direct informant" and that Jacobs "was never placed under oath regarding the veracity of his underlying statements to police." The court also believed that Jacobs' "signature was not properly verified by notary signature." The trial court also viewed Jacobs as affirming only "that he *told* Finke those facts, not that those facts were indeed true." The trial court further stated that:

> The State presented no evidence to show that either Detective Finke or Jacobs was reliable given that neither testified at the hearing on the motion to suppress.

### Analysis

"The Fourth Amendment to the United States Constitution guarantees that no warrant shall issue except upon probable cause supported by oath or affirmation." *Neher*, 213 S.W.3d at 48–49. "A neutral magistrate or judge must determine probable cause from the totality of the circumstances." *Id.* at 49. "In determining whether probable cause exists, the issuing magistrate or judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her] ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* The presence of such contraband or evidence "need not be established, at a *prima facie* level, by a preponderance of the evidence or beyond a reasonable doubt." *Id.*

"Common sense is a key ingredient in considering the absence or presence of probable cause." *State v. Rush*, 160 S.W.3d 844, 849 (Mo.App.2005). "[R]eliance upon factual allegations necessarily

entails some degree of reliability upon the credibility of the source." *Illinois v. Gates,* 462 U.S. 213, 230 n. 6, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). It is not required that "each factual allegation which the affiant puts forth must be independently documented, or that each and every fact which contributed to his conclusions be spelled out in the complaint." *Id.* The concepts of "veracity," "reliability," and "basis of knowledge" are relevant considerations, but they are not entirely separate and independent requirements to be rigidly applied in every case. *Id.* at 230, 103 S.Ct. 2317. "Rather ... they should be understood simply as closely intertwined issues that may usefully illuminate the common sense, practical question whether there is probable cause to believe that contraband or evidence is located in a particular place." *Id.* Under the "totality-of-the-circumstances" method of analysis, a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing of the other "or by some other indicia of reliability." *Id.* at 233, 103 S.Ct. 2317.

In dealing with probable cause we deal with *probabilities,* not certainties. *See id.* at 231, 103 S.Ct. 2317. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.*; *State v. Buchli,* 152 S.W.3d 289, 305 (Mo.App.2004). "Search warrants, therefore, should not be deemed invalid 'by interpreting affidavits in a hyper technical rather than common sense manner.'" *Buchli,* 152 S.W.3d at 305. The preference for warrants that requires us to give deference to the issuing judge's determination of probable cause also requires some latitude in interpretation of the supporting affidavit. *Trenter,* 85 S.W.3d at 677. "Even when the sufficiency of an affidavit is marginal, our de-termination should be informed by the preference accorded to warrants." *Id.*; *see State v. Hill,* 854 S.W.2d 814, 818 (Mo.App.1993).

"Informants' tips doubtless come in many shapes and sizes from many different types of persons." *Gates,* 462 U.S. at 232, 103 S.Ct. 2317. "Rigid legal rules are ill-suited to an area of such diversity." *Id.* "One simple rule will not cover every situation." *Id.* The affidavit in support of a search warrant should be weighed as understood by those versed in law enforcement and not in terms of library analysis by scholars. *Id.* "[A]ffidavits 'are normally drafted by non-lawyers in the midst and haste of a criminal investigation.'" *Id.* at 235, 103 S.Ct. 2317. "Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Id.*

The State here says that the trial judge failed to apply the right tests here in granting the motion to suppress. The State asserts that the trial judge evidently thought the proper approach was a rigid, highly technical approach requiring strict attention to detail rather than a practical, common sense approach. The State also notes that the trial court did not favor Judge Sodergren's warrant with any presumption of sound discretion. The court evidently believed the burden was *not* on the defendant to show the warrant was invalid but was on the State to demonstrate the propriety of the warrant by the presentation of witnesses. The court believed that the informant (Jacobs) was not a direct affiant and also did not believe the officer could be regarded as reliable without the presentation of evidence by the State that the officer was reliable.

The court saw the statements of Jacobs as not being a direct affirmation of his own knowledge, based on his personal observation, but rather as simply being a state-

ment of what he told the officer, without there being any implication that what he told the officer was true. Thus, the court viewed his signature as meaningless. The court also did not believe Jacobs had signed the document before a notary public after being sworn.

■ An affidavit of a police officer relying on a statement made by someone else may be sufficient to support a finding of probable cause if there is a "substantial basis" for crediting the statement of the informant. *Neher*, 213 S.W.3d at 49. This will often require some indication that the informant learned the information through personal observation. *Id.* at 50. It is also important to know whether the informant's statements were corroborated through other sources or whether there is some other reason to believe that the informant can reasonably be relied upon. *See State v. Tramell*, 84 S.W.3d 173, 175 (Mo.App. 2002).

■ Conversely, "[w]here the informant *directly serves as the affiant* for a search warrant, thereby running the risk of a perjury prosecution, it may be fairly concluded that the information given by the informant under oath is reliable." *State v. Weide*, 812 S.W.2d 866, 871 (Mo. App.1991) (emphasis added). Corroboration is generally not required. *Id.*

On appeal, the State argues that *both* Detective Finke and Jacobs were affiants. The State also notes that Jacobs' statements were based on his own personal observation. Henry says that Detective Finke was the only direct affiant and that Finke was relying on Jacobs and lacked substantial reason to believe Jacobs.

The prefatory paragraph of the affidavit states only: "Comes now, Curtis Finke." The text of the affidavit and the signature could be viewed as representing that Jacobs was also purporting to act as an affiant, but it also could alternately be viewed as merely a statement of what Jacobs purportedly told Finke. The view that there was intent for Jacobs to be viewed as an affiant is supported by the notion that under Jacobs' signature there appears the following: "James Jacobs, *Affiant.*" (Emphasis added.) The notary seal appears to the left of the signatures of both Officer Finke and Jacobs. The notary jurat, stating "Subscribed and sworn to before me this date: 01–29–2008," is generic in form and appears beneath the signatures of both Officer Finke *and* Jacobs.

The application for the search warrant is comprised of multiple documents. The first document is the affidavit of an assistant prosecuting attorney, stating her belief that evidence of drug possession and drug trafficking would be found at Henry's address and referring to the attached *affidavits* (plural). In issuing the search warrant, the issuing judge stated that probable cause was found by virtue of the "sworn allegations of said application and from the supporting written *affidavits* filed therewith." (Emphasis added.) The issuing judge thus accepted the prosecutor's view that Jacobs was acting, at least in essence, as an affiant.

### Review by the Trial Court

The *trial* court is not to decide whether *it* would have issued the warrant. It is to decide whether the issuance of the warrant was "clearly erroneous." In that regard, affidavits should not be closely scrutinized for technical irregularities by the reviewing court when the common sense of the matter suggests substantial reason to believe that the contraband will be found at the place to be searched. *See Buchli*, 152 S.W.3d at 305; *State v. Wegrzyn*, 751 S.W.2d 796 (Mo.App.1988) (deputy sheriff's notarized application for warrant was

based on document signed by police officer that was not dated, not verified by oath, and not properly notarized; court held that the combination of documents was sufficient to satisfy the verification requirement); *State v. Gannaway,* 786 S.W.2d 617, 619 (Mo.App.1990) (no signature, but evidence of intent to make affidavit was sufficient); *State v. Walker,* 574 N.W.2d 280, 284–288 (Iowa 1998) (reason to believe signer under oath at the time he signed his name to the proof of service, despite lack of documentation thereof); *State v. Benoski,* 281 A.2d 128, 129 (Me. 1971) (supporting document lacking jurat held sufficient).

### Identified Informant

*State v. Utterback,* 240 Neb. 981, 485 N.W.2d 760 (1992),[3] urged by defendant Henry as authoritative here, and relied upon by the trial court, is not on point. It involved an *un*identified confidential informant. In this case, one thing clear is that Jacobs is not a "confidential informant." Also clear is that Jacobs purported to have personal knowledge of the very recent presence of contraband at Henry's apartment. Although Jacobs is not identified in the prefatory paragraph as an affiant, the import of the application for search warrant taken as a whole, including the assistant prosecuting attorney's reference to multiple affidavits, Jacobs' identification as an affiant under his signature line, and the appearance of the jurat beneath Jacobs' signature, all could reasonably, as a matter of common sense, support the notion that he was, at least functionally, a direct affiant. *See State v. Journey,* 1 Kan.App.2d 150, 562 P.2d 138, 140–41 (1977) (warrant upheld where statement signed by an informant with apparent intent for state-

ment to be under oath, though not fully compliant with procedural technicalities).

In this case, the paperwork appeared to have been drafted as though Det. Finke originally intended to present only his own affidavit (as if Jacobs were to be treated as a confidential informant). But then the officer apparently changed his mind at some point, after the initial draft, and decided to attempt to see if Jacobs would sign the affidavit. The officer elected not to re-word the text of the affidavit so that both he and Jacobs would be speaking in the first person. Instead, the text continued to refer to Jacobs in the third person. The officer added a signature line for Jacobs and referred to Jacobs as an "affiant" below the signature line. Though there is a presumption of regularity generally attending affidavits, there is no way to discern conclusively from the document whether Jacobs actually signed in front of the notary or whether Jacobs merely signed after the notary had acknowledged Det. Finke's signature. Either scenario could be true.

We do not blame the trial court for "raised eyebrows" upon review of the documents. However, the trial court apparently believed that because the application papers were not in perfect form, the papers could not be evaluated from a common sense standpoint, allowing reasonable deference to the determination of the issuing judge.

The issuing judge, Judge Sodergren, was entitled to consider the fact that Jacobs, by signing his name to a document that purported to present him as an affiant, whether formally sworn or not, was emerging from the faceless ranks of anonymous informants and thereby subjecting

---

**3.** *Utterback* was overruled in part by *State v. Johnson,* 256 Neb. 133, 140, 589 N.W.2d 108 (1999).

himself to various risks, including potential civil liability for false arrest and invasion of privacy, potential criminal prosecution for making a false statement to police (and arguably for perjury, depending on the facts of the notarization), and further subjecting himself to whatever practical consequences might befall identified police informants on the street or in custody. It is true that he sought to curry favor with officers who presumably had caught him "red-handed," but we fail to see that such fact means, *ipso facto*, that he was willing to make serious allegations as an *identified* informant, knowing that his allegations were reckless or false.

We cannot say as a matter of law that the issuing judge was required to believe that Jacobs had no credibility in this context or that the issuing judge was required to treat Jacobs as a confidential informant, for whose word corroboration must be shown. Regardless of the deficiencies attending Jacobs' signed statement, the purported affidavit still tended to bolster his credibility. *See, e.g., State v. Garcia*, 140 Wash.App. 609, 166 P.3d 848, 854 n. 4 (2007) (informant's "signed, written statement" was a factor in the informant's credibility). Jacobs' signed statement confirmed his own involvement in narcotic activity as the explanation for how he observed illegal narcotics in Henry's residence. *See United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions." *State v. Erwin*, 789 S.W.2d 509, 511 (Mo.App.1990) (*quoting Harris*, 403 U.S. at 583, 91 S.Ct. 2075). The issuing judge could reasonably have regarded an *identified* informant as generally more credible than a "confidential informant" and as sufficiently credible to warrant the likelihood that the search pursuant to warrant would yield the contraband specified.

Jacobs' signed statement indicates that his information was the result of personal observation. *See Neher*, 213 S.W.3d at 50 ("implicit in the affidavit is an understanding that the informant learned his information through personal observation"). The freshness of the information is also significant. In this case, Jacobs claimed to have observed the illegal drugs in Henry's apartment at 10:00 p.m. on January 28, 2008. The search warrant was issued the next morning.

This case illustrates the importance of knowing which judicial determination we are reviewing. Had Judge Sodergren, at the time the application was presented, been uncomfortable with the wording and arrangement of the affidavit, he could have been well within his discretion to decline to issue a warrant until the paperwork was to his satisfaction. *See, e.g., State v. Gordon*, 851 S.W.2d 607, 611 (Mo.App.1993) (application for warrant not signed by prosecuting attorney as specified by statute; signed only by the peace officer applying for warrant; warrant held valid, though court commented that issuing judge would have had discretion to decline). Judge Sodergren, however, having considered the paperwork in the light of practical common sense of everyday life, and apparently regarding it as probable that Jacobs, in this context, fully intended to be understood as swearing from personal knowledge as to his accusations concerning Henry's apartment (and being aware that Jacobs would likely subject himself to risk of potential harm by making such an accusation), could reasonably have assigned credibility to Jacobs' statement and believed that there was a substantial basis in common sense for concluding that officers would find contraband at Henry's apartment.

Had the defendant wished to show that the warrant was obtained on the basis of a misleading affidavit or by trickery, the defendant could have chosen to present evidence to support his theory. *See Weide*, 812 S.W.2d at 870; *State v. Dawson*, 985 S.W.2d 941, 950 (Mo.App.1999). Here, the evidence presented by the State at the suppression hearing (which was the only evidence presented) did not demonstrate any invalidity in the warrant.[4]

Looking at the four corners of the warrant application and the supporting affidavits and applying the principle that a *reviewing* court should not quash a warrant by construing it in an overly technical, rather than in a common-sense, manner, this court cannot say that Judge Sodergren, the *issuing* judge, "clearly erred" in initially determining, based on the totality of the circumstances, that probable cause existed. *See Neher*, 213 S.W.3d at 49. The issuing judge had a substantial basis for concluding that there was a fair probability that contraband and evidence of criminal activity would be found at Henry's residence.

### Conclusion

The judgment of the trial court granting Henry's motion to suppress is reversed. The case is remanded to the trial court for further proceedings.

All concur.