

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | ) |
| | ) WD77401 |
| v. | ) |
| | ) OPINION FILED: |
| | ) December 8, 2015 |
| WYATT M. MITCHELL, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Robert L. Koffman, Judge**

**Before Division II:** Mark D. Pfeiffer, Presiding Judge, and
Lisa White Hardwick and James Edward Welsh, Judges

Mr. Wyatt Mitchell ("Mitchell") appeals the judgment of the Circuit Court of Pettis County, Missouri ("trial court"), finding him guilty, after a jury trial, of possession of marijuana with intent to deliver, and three counts of possession of a controlled substance (hydrocodone, alprazolam, and clonazepam). On appeal, Mitchell claims that the trial court erred in admitting certain evidence against him that he claims was obtained in violation of his constitutional rights. We affirm.

**Factual and Procedural Background**

On May 29, 2013, Sedalia police searched Mitchell's home pursuant to a warrant obtained after information was supplied to police by Chad Marcum. When police executed the warrant, they found Mitchell at home, in his living room. Police handcuffed Mitchell, read him the warrant, advised him of his rights, and moved him to the bedroom while they conducted their search. During the search of Mitchell's person, police recovered his cell phone, which contained numerous recent text messages from people seeking to purchase marijuana and from Mitchell responding either that he did or did not have some to sell at that time. During the search, Mitchell stated that he had some marijuana for his own use in a cabinet next to the refrigerator. In that cabinet, police found marijuana in a pill bottle and a larger amount in a glass Mason jar. They also found a grinder, a digital scale, a small plastic container that held six or seven apparent prescription pills, several plastic bags that smelled of marijuana and appeared to have marijuana residue in them, and around $1300 in cash in various locations.

After the search, Mitchell was charged as a persistent drug offender with possession of marijuana with intent to deliver and three additional counts of possession of a controlled substance, which pertained to the pills seized by police. Mitchell filed a motion to quash the search warrant and to suppress the evidence obtained in the search of his residence, claiming that the warrant had been issued without probable cause and was "drafted with reckless disregard of the truth."

> The affidavit supporting the application for the search warrant stated:
>
> Comes now Kevin L. Klein and, being of lawful age and first duly sworn, upon my oath state:
>
> I am and at all times mentioned in this Affidavit was a duly commissioned Sedalia Police Officer. I have been employed with the Sedalia Police Department since May 2010. My primary assignment now is drug investigations.

2

On May 29th, 2013, Sedalia Police Department Detective David Smith and I made contact with Chad William Marcum. Detective Smith and I conducted a recorded interview with Marcum in regards to local drug activity. Marcum allowed us to drive him by some houses within Sedalia, Missouri, where he pointed out houses where he knew drugs were being sold.

Marcum was driven by an apartment complex located at 2423 West Main Street, Sedalia, Missouri, where he indicated Wyatt Mitchell lived. Marcum stated he was familiar with Mitchell selling marijuana. Marcum stated he was at Mitchell's apartment on the morning of May 28th, 2013, where he saw a couple ounces of weed. I am familiar with marijuana being referred to as weed. Marcum stated he saw a couple ounces at that time, but he knows Mitchell to typically have pounds of marijuana at his residence.

Mitchell is known to associate with members of the local gang "5 Block[."] Members of the gang frequent Mitchell's residence to get their hair cut. Members of 5 Block are known to carry weapons and assault law enforcement.

The building at 2423 West Main Street, Sedalia, Missouri is described as a two story brick structure with a gray colored roof. On the east side of the building is a wooden deck, which has stairs leading to the second story of the building. Two doors are located on the east side of the building, on the second story, with "2423" being displayed in black numbers on the southernmost door. 2423 West Main Street, Sedalia, Missouri, is the third building east of the intersection of West Main Street and West Avenue, on the south side of the road.

The foregoing is true and correct to the best of my knowledge, information and belief.

The motion to suppress alleged that the police informant, Chad Marcum, stated in his deposition that he did not provide information to the police as was set forth in the affidavit and that he did not know Mitchell and had never been in Mitchell's apartment. The trial court held a hearing on the matter, wherein "the Court saw and heard the video tape of the officers being led to the home of the defendant and the informant [i.e., Marcum] stating that he had seen the defendant and the illegal contraband at that location." The trial court thus concluded that the police had no reason at the time the affidavit was sworn to doubt the information given to them by Marcum, concluded that the affidavit was sufficient for the court issuing the warrant to

3

determine that there was probable cause to support the warrant, and denied the motion to suppress. The jury found Mitchell guilty of all four counts, and judgment was entered accordingly. This appeal follows.

## Standard of Review

We review the trial court's denial of a motion to suppress evidence for whether the trial court's ruling was supported by substantial evidence. *State v. Edwards*, 116 S.W.3d 511, 530 (Mo. banc 2003). To the extent that the challenge to the evidence is that a warrant was issued without probable cause, we look to whether the decision of the court *issuing the warrant*, not of the trial court, was clearly erroneous. *State v. Henry*, 292 S.W.3d 358, 362 (Mo. App. W.D. 2009). This review is greatly deferential to the warrant-issuing court. *See also State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007). Generally, "the appellate court may not look beyond the four corners of the warrant application and the supporting affidavits." *Id*. However, when, as in this case, it is alleged that the supporting affidavit includes deliberately false information or is made with reckless disregard for the truth, matters outside of the four corners of the affidavit must be considered. *State v. Trenter*, 85 S.W.3d 662, 670 (Mo. App. W.D. 2002). As always, deference is given to the trial court's credibility determinations. *See State v. Rousan*, 961 S.W.2d 831, 845 (Mo. banc 1998).

## Analysis

Mitchell's first point on appeal is that the trial court erred in refusing to suppress the evidence police obtained in the search of his home because the search warrant was obtained without a showing of probable cause and because the affidavit in support of the application for the warrant was drafted with reckless disregard for the truth. Both the Fourth Amendment to the United States Constitution and article I, section 15 of the Missouri constitution protect citizens

4

from unreasonable searches and seizures. Warrants will not be issued "without probable cause, supported by written oath or affirmation." Mo. Const. art. I, § 15.

First, we consider Mitchell's claim that the "oath or affirmation" (i.e., the affidavit) of Detective Klein was drafted with reckless disregard for the truth—in other words, a challenge patterned after the case of *Franks v. Delaware*, 438 U.S. 154 (1978). Pursuant to *Franks*, if a defendant establishes by a preponderance of the evidence that an affidavit supporting an application for a search warrant contains a deliberate falsehood or a statement made in reckless disregard of the truth (and this determination is made by the trial court after a hearing), the false or reckless statements are disregarded. *Id.* at 155-56. Then, the reviewing court decides whether the court that issued the warrant *initially* could have made a practical, commonsense decision that, given all of the *remaining* circumstances set forth in the affidavit, there was a fair probability that contraband or evidence of a crime would be found at the place sought to be searched. *See Henry*, 292 S.W.3d at 363. Thus, once the "affidavit's false material [is] set to one side, [if] the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 156.

In this case, Mitchell's motion to suppress alleged that the warrant application's affidavit was made with reckless disregard for the truth because the police informant, Chad Marcum, denied at a deposition ever having made the statements to police that the affidavit reflected he had made. As *Franks* requires, the trial court held a hearing on this matter, wherein both Marcum and the affiant officer testified. Marcum initially denied ever having been in a patrol car with the officer, denied knowing Mitchell, and denied having shown police Mitchell's apartment. However, when confronted with the fact that Marcum's ride-along with law

5

enforcement had been recorded on audio and video, Marcum—not so coincidentally—equivocated. The video was shown, and the trial court was able to observe "the officers being led to the home of the defendant and the informant [i.e., Marcum] stating that he had seen the defendant and the illegal contraband at that location." Clearly, the trial court found Marcum's more recent deposition statements to have been lacking in credibility, and we defer to that credibility determination. *Rousan*, 961 S.W.2d at 845. Given the audio and video recording, we agree with the trial court that it was not "reckless" for the officers to have relied upon the information that was, in fact, provided by Marcum at the time the affidavit supporting the warrant application was prepared.

Mitchell also claims that the affidavit was reckless because it failed to mention that Marcum had been arrested for a drug offense and was cooperating with law enforcement in hopes of leniency, which, Mitchell claims, undermines his credibility as an informant such that the warrant-issuing court could not have found probable cause had it been aware of this fact. To be sure, courts have stated that statements from ordinary citizens are presumed to be more reliable than those of informants from "'the criminal milieu.'" *State v. Williams*, 9 S.W.3d 3, 15 (Mo. App. W.D. 1999) (quoting *State v. Dawson*, 985 S.W.2d 941, 950 (Mo. App. W.D. 1999)). However, Missouri courts have also stated that an informant's desire to curry favor with officers who had "caught him red-handed" did not mean that he could not serve as a reliable identified informant such that the officer's affidavit was knowingly reckless or false. *Henry*, 292 S.W.3d at 367. Further, as we have stated previously:

> While some federal cases cited by the parties note that it is better to provide information about an informant's criminal past, or to at least disclose that the informant may have been involved in the criminal activity he is informing about, such information is not required in order to avoid misleading the [warrant-issuing judge]. Indeed, other cases have noted that most informants could not obtain the information they have about a criminal activity unless they were involved in it. A

[warrant-issuing judge] will often assume that the informant was involved, and that this is how the information was acquired. The [warrant-issuing judge] is thus not misled by the failure to mention the informant's criminal history.

*State v. Mitchell*, 20 S.W.3d 546, 555 (Mo. App. W.D. 2000). Here, the affidavit itself states that Marcum's police interview was "in regards to local drug activity," and that "Marcum allowed us to drive him by some houses within Sedalia, Missouri, where he pointed out houses where he knew drugs were being sold." The court issuing the warrant would undoubtedly have inferred from this affidavit that the named informant, Marcum, had obtained his personal knowledge of drug houses via his past "experience" with the local drug trade, and likely also would logically have inferred that Marcum was cooperating with police in exchange for something—whether it be leniency or something else favorable to the "experienced" drug trade informant. Likewise, the warrant-issuing court would not have logically concluded that Marcum was merely a concerned citizen. Therefore, the affidavit's silence on this topic does not render it "in reckless disregard of the truth."[1]

Because Mitchell's *Franks* claim fails, we review the affidavit *as is*. However, we do not review the affidavit to make our own independent decision as to whether it supports probable cause and whether we would have issued the warrant ourselves; instead, we review to determine whether the court that issued the search warrant could have made a practical, commonsense decision that, given all of the circumstances set forth in the affidavit, there was a fair probability that contraband or evidence of a crime would be found at the place sought to be searched. *See Henry*, 292 S.W.3d at 363. "[B]ecause there is a strong preference in the Fourth Amendment for searches to be conducted pursuant to a warrant, a reviewing court should not quash a warrant by

---

[1] That said, the best practice is for law enforcement to provide the warrant-issuing judge as much information as possible so that the judge may make a fully informed decision regarding the issuance of the warrant and to avoid challenges to the warrant such as the one currently before this court.

construing it in a hyper-technical, rather than a commonsense, manner." *Id.* at 362 (internal quotation omitted).

On the topic of probable cause, Mitchell argues that the affidavit does not support a finding of probable cause because it is based upon the hearsay of the informant, Marcum, and there is insufficient evidence in the affidavit of Marcum's "basis of knowledge" or his "veracity" to make the hearsay adequately reliable. A court issuing a warrant decides whether the totality of the circumstances establishes probable cause. *See State v. Baker*, 103 S.W.3d 711, 720 (Mo. banc 2003). "[T]he fact that these circumstances are attributable to hearsay will not, by itself, render an affidavit deficient." *Id.* "An affidavit that relies on hearsay is sufficient to support a finding of probable cause if there is a substantial basis for crediting the hearsay." *Id.* Some factors an issuing court considers are: the identity of the declarant; whether the declarant relies on personal knowledge; whether the information has been corroborated; and proof of past criminal activity. *Id.* An additional factor is the "freshness" of the information. *Henry*, 292 S.W.3d at 367.

In this case, the record reflects that the hearsay-providing informant, Marcum, was not anonymous, but his identity was known to the police and to the judge issuing the warrant. *See State v. Long*, 417 S.W.3d 849, 854 (Mo. App. S.D. 2014) (named informants are generally considered more reliable than "anonymous tipsters"). In addition, Marcum told police that he had been in Mitchell's apartment only the day before his interview with police, that he had personally observed a "couple ounces" of marijuana, and that he knew Mitchell typically to have "pounds" of marijuana at his residence. Therefore, the declarant Marcum's information was "fresh" and based on his personal knowledge, both factors enhancing his credibility. Finally, the

8

officer submitting the affidavit corroborated that Mitchell was known to host members of the dangerous "5 Block" gang at his home.

The *Henry* court *reversed* a trial court's *grant* of a motion to suppress when a warrant had been issued based upon an affidavit very similar to the one in the present case. In *Henry*, the declarant had also been arrested when he had agreed to provide information. 292 S.W.3d at 363. The informant in *Henry* also had witnessed the presence of controlled substances the previous day at the defendant's residence. *Id.* The *Henry* affidavit showed no other connection between the defendant to be searched and any other crime or criminal element. *Id.* On the contrary, in this case, police had all of the same quality of information from the *Henry* affidavit and additionally knew that dangerous gang members frequented Mitchell's residence, all of which appeared in the present affidavit in support of the warrant application. We conclude that the warrant-issuing court could have, based on the totality of the circumstances, reasonably found that there was a fair probability that contraband and evidence of criminal activity would be found at Mitchell's residence at the time the warrant was issued.

Point I is denied.

Mitchell's second point on appeal is that the trial court clearly erred in denying his motion to suppress basing its denial on facts not in evidence. Mitchell did not raise this point of error before the trial court, but he urges this court to review the matter for plain error pursuant to Rule 30.20. Rule 30.20 gives this court discretionary review over unpreserved plain errors of the trial court whether they have been briefed or not. *State v. Williams*, 9 S.W.3d 3, 12 (Mo. App. W.D. 1999). Under the circumstances of this case, we decline to exercise our discretion to review this issue for plain error.

9

Mitchell's argument is that the trial court erred because its written ruling denying the motion to suppress evidence referred to Marcum as a confidential informant, even though the affidavit named Marcum and stated that he had provided accurate information to the police on two separate occasions (when that information was not known to the warrant-issuing court at the time the warrant was issued). Irrespective of the trial court's characterization (or mischaracterization) of Marcum, as stated above in our discussion of Point I, when the claim is that there was not probable cause to support the issuance of a warrant, our review is limited to whether the *warrant* court could properly have found probable cause, based upon the warrant application and the accompanying affidavit. We have concluded that it could have. Accordingly, any factual misstatement by the *trial* court as to the characterization of Marcum is irrelevant to our consideration of this issue.

Point II is denied.

Mitchell's third and final point on appeal is that the trial court erred in denying his motion to suppress because the Sedalia Police exceeded the scope of the warrant when they seized the pills in the unmarked plastic container. The warrant issued allowed police to search Mitchell's residence for marijuana, paraphernalia, and packing supplies. Therefore, police were allowed, pursuant to the warrant, to search any areas of the residence in which those items might reasonably be found. While police were executing the warrant, Mitchell admitted to them that there was marijuana in a cabinet in the kitchen. Upon searching the kitchen cabinets, police did indeed find marijuana, both in a plastic pill bottle and in a glass Mason jar. While police were searching the cabinet and its containers for marijuana, they came upon an unmarked plastic container which held other pills, later identified to be other controlled substances, and Mitchell was charged with possession of these controlled substances.

10

The plain view exception to the Fourth Amendment's warrant requirement allows officers to seize evidence in plain view "when the evidence is in an area where the items described in the search warrant might be, and the incriminating character of the evidence is immediately apparent." *State v. Robinson*, 379 S.W.3d 875, 881 (Mo. App. S.D. 2012) (citing *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987)). "The seizure of property in plain view is presumptively reasonable when probable cause exists to associate the property with criminal activity." *Id.* (internal quotation omitted). "The incriminating nature of evidence is immediately apparent if facts available to the officer would warrant a person of reasonable caution in the belief[] that certain items may be contraband." *Id.* (internal quotation omitted).

In this case, the officer was searching an area he was allowed to search in execution of the warrant when he found the controlled substances. The officer who found the pills testified that it appeared to him, based upon his experience, that these pills were likely controlled substances. Other facts supported the officer's initial suspicion: the pills were not in a prescription container or an over-the-counter medicine bottle; Mitchell possessed, used, and perhaps sold marijuana, another controlled substance; text messages on Mitchell's phone indicated that he was likely selling marijuana, and a large amount of cash was found, indicating that Mitchell likely sold drugs. All of these facts would warrant an officer of reasonable caution to believe that the pills in the container might be contraband. *See id.* Accordingly, under plain view, the searching officers properly seized the pills, and the trial court did not clearly err in suppressing the evidence on the basis that the seizure exceeded the scope of the search warrant.

Point III is denied.

## Conclusion

Accordingly, the judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Lisa White Hardwick and James Edward Welsh, Judges, concur.